# LUKE BUZZELL *v.* WILLIAM H. CUMMINGS.

## *Vendor's Lien.   Mortgage.*

1. Where personal property is sold in Vermont to a resident of New Hampshire for the purpose of being attached to the realty in that State under a verbal lien that it shall remain the property of the vendor, the question whether it will pass by a conveyance of the realty when so attached must be determined by the laws of New Hampshire.

2. The transfer of a promissory note secured by a vendor's lien does not *per se* transfer the legal title to the security.

3. S. owned a saw mill in New Hampshire. Sept. 15, 1887, he sold it to B. and conveyed it to the wife of B. February 2, 1878. At the date of sale S. received from Mrs. B. $50 cash and the notes of B. and wife for the balance, which were secured by mortgage on the property executed May 1st, and recorded May 2, 1878. In March, 1878, B. bought of plaintiff a new water wheel for the mill, agreeing verbally that it should remain the property of the plaintiff until paid for, and June 1st, 1878, a written lien was executed and recorded in town clerk's office in St. Johnsbury. The wheel was shipped April 1st., and soon afterwards, but it did not appear whether before or after May 1st, affixed to the mill in such a manner that it might pass by deed of the realty, or might preserve its character of personalty. In September, 1878, the wife of B. separated from him and November 11, 1878, conveyed her interest in the property by deed quit-claim to the defendant, who then paid and took a transfer of the Sawyer notes. She did not expect that the wheel passed by the conveyance. *Held*, that the defendant did not acquire title to the property under the quit-claim deed. That, as to the S. mortgage, the burden was upon the defendant to show that it had been affixed to the realty when the mortgage was given, and this not appearing, the plaintiff had good title under the laws of both Vermont and New Hampshire.

4. The note given for the property had been transferred, but the lien had not been assigned. *Held*, that the suit was properly brought by the owner of the note in the name of the plaintiff.

Trover for the recovery of a water wheel. The case was heard at the June Term, 1887, Powers, J., presiding, upon the report of a referee. Judgment for the plaintiff. Exceptions by the defendant.

The referee found a demand previous to the service of the writ by an officer of the First National Bank of St. Johnsbury, which then owned the note, and a refusal.

As to the law of New Hampshire, the report was as follows :·

" Evidence was introduced before me as to the law of New Hampshire bearing upon this case. 1 find the law of New Hampshire to be as laid down in the case of *Cochran* v. *Flint,* 57 N. H. 514. The statute law of New Hampshire was proven before me as found in its printed statutes, and the same is re-- ferred to and made a part of this report."

The written lien was actually executed in New Hampshire.

The other facts sufficiently appear in the opinion.

*Smith & Sloane,* for the defendant.

Since the trade was made in Vermont, the law of this State must govern. The verbal lien was of no validity as against an innocent purchaser. Having sold this water wheel to be used in the mill, the plaintiff has assented to its being affixed to the realty. *Davenport* v. *Shants,* 43 Vt. 552 ; *Bugbee* v. *Stevens & Bagley,* 53 Vt. 389.

Before the written lien was taken the Sawyer mortgage had been executed, and new rights had intervened. It was the plaintiff's fault that the defendant had no notice of his lien, and he ought therefore to suffer. The lien was not valid by the laws of either Vermont or New Hampshire, and hence the plaintiff had no right to the property as against a mortgagee. *Savings Bank* v. *Exeter Machine Works,* 127 Mass. 542 ; *Hunt* v. *Bay State Iron Co.,* 97 Mass. 279.

To entitle the plaintiff to recover he must have either possession or the right of possession. In this case he had neither, for he had transferred his title to the bank, and the demand was made for the bank. *Deering* v. *Austin,* 34 Vt. 330 ; *Burnell* v. *Marvin,* 44 Vt. 277.

*Ide & Stafford,* for plaintiff.

The deed from Mrs. Burton being a quit-claim, the defendant takes nothing more under it than she had. She never claimed or supposed she had any title to this water wheel. *Springer* v. *Bartle,* 46 Iowa 688 ; *Winkler* v. *Miller,* 54 Iowa 476.

In order to claim title under the Sawyer mortgage it must be shown that Sawyer had some equitable title to it. But he had none. The notes which his mortgage secured were given under an agreement to execute the mortgage when this water wheel was not a part of the property. He neither parted with his money nor did any other act on the strength of it. The recording of the lien was only material as affecting subsequent attaching creditors or innocent purchasers, and the defendant was neither. *Davenport* v. *Shants et al.,* 43 Vt. 546.

The law in New Hampshire is even more favorable to the plaintiff than that of Vermont. *Cochran* v. *Flint,* 57 N. H. 514.

This suit could not have been brought in the name of the bank. *Batchelder* v. *Jenness,* 59 Vt. 105 ; *Crane* v. *Paine,* 4 Cushing 483 ; *French* v. *Haskins,* 9 Gray 195; *Smith* v. *Atkins,* 18 Vt. 461.

The opinion of the court was delivered by

TYLER, J. The facts in this case are as follows : On the 15th day of September, 1877, Hiram D. Sawyer, of Bath, N. H., being the owner of certain premises in that town upon which was situated a grist mill, on that day sold the premises to William F. Burton for five hundred dollars, and by arrangement between the parties conveyed the same by deed to Rosalind Burton, wife of said William F. Burton.

The deed was dated February 2d, 1878. Fifty dollars of the purchase price was paid by Mrs. Burton at the time of the purchase and six promissory notes, dated Sept. 15th, 1877, for $75 each, were given by Burton and wife payable to Sawyer or order, and secured by a mortgage on the same premises, which mortgage was executed by them May 1st, and recorded May 2d, 1878.

An old wooden water wheel then in the mill being insufficient, in March, 1878, said Burton went to St. Johnsbury in this State and bargained with the plaintiff, who was a machinist, for one left hand forty inch giant water wheel with wheel shaft and

couplers, under a verbal agreement that the property should remain the plaintiff's until paid for. Twenty or twenty-five dollars were paid by Burton at the time of the purchase and he agreed to give a note on eighteen months time for the remaining sum of $229. Before giving the note a quantity of old iron was applied in part payment.

The wheel, shaft and couplings were shipped to Burton about April 1st, 1878, and he some time after took out the old wheel and put in the new one, attaching it to the bulkhead by bolting it to timbers with ordinary iron bolts. The time when this was done does not appear. After it was done Burton operated the mill with the new wheel. June 1st, 1878, after the wheel and fixtures had been put into the mill, the plaintiff took a vendor's lien upon the same from Burton and caused it to be recorded in the town clerk's office in St. Johnsbury. The lien is as follows:

" St. Johnsbury, Vt., June 1st, 1878.

I, the undersigned, William F. Burton of Bath, N. H., have bought of Luke Buzzell of St. Johnsbury, Vermont, one left hand forty inch giant water wheel, with wheel shaft, couplers, etc., meaning all the work furnished by said Luke Buzzell at a cost of four hundred and thirty-eight dollars and ten cents, for which I have this day given one promissory note for two hundred and twenty-nine dollars, dated June 1st, 1878, on eighteen months time from date with interest annually, and the balance paid in cash, old iron and discounts.

Now be it known, that the above mentioned water wheel, etc., is, and is to remain the property of the said Luke Buzzell until the above mentioned note and interest are fully cancelled and paid, and if not paid at maturity, Luke Buzzell or his agents shall have the right to peaceably enter the premises and take away said property."

Witness, Wm. H. Hubbard.

[Signed.]　　WILLIAM F. BURTON."

In September, 1888, Mrs. Burton separated from her husband and went to live with her father in Bath. She then held the title to the mill property subject to the Sawyer mortgage.

October 31, 1878, Sawyer leased the mill property to Burton, having foreclosed his mortgage and taken actual or constructive possession. Soon after this Mrs. Burton bargained her interest to the defendant and Edward Rand, and conveyed it to Rand and Cummings by quit-claim deed dated November 11, 1878, Cummings paying her $65 for her interest, and paying off Sawyer's mortgage and notes, the latter being endorsed "without recourse." At the time of her sale to Cummings Mrs. Burton knew of the plaintiff's lien upon the wheel and fixtures and made no claim to them herself. Cummings had then known this mill for about thirty years, supposed the old wheel was running it and knew nothing about the new wheel at the time of his purchase, but he learned of it soon after and before he paid off the Sawyer mortgage, and about the time of such payment, which was November 29, 1878, learned of the plaintiff's lien.

The lien reserved was effectual to maintain the title to the property in question in the plaintiff as against Burton and wife. Burton expressly agreed that it should remain the plaintiff's until paid for, and to this Mrs. Burton assented. The identity of the property as chattels might be preserved as between these parties by their intentions and acts. *Davenport* v. *Shants et als.* 43 Vt. 546; *Cochran* v. *Flint*, 57 N. H. 514. It is apparent that Mrs. Burton did not understand that her deed to the defendant passed this property to him, and as her deed was one of quit-claim, he would have been bound to inquire and ascertain what claims, if any, were upon the wheel had he known it was in the mill. It is clear, therefore, that the defendant acquired no title to the wheel by virtue of the deed through any intention of the parties.

Did Sawyer by virtue of his mortgage acquire title to it by its adjunction to the realty and pass it to the defendant, notwithstanding the intention and agreement of the plaintiff and Burton and wife that it should remain the chattel of the plain-

tiff? It was a kind of property that when attached to the realty might pass by deed or mortgage, and as it was removable without material injury to the mill its character as personalty might be maintained.

A mere verbal lien is valid under the laws of New Hampshire, and this, though not recorded within thirty days, was valid under the laws of this State as to all persons but attaching creditors and subsequent purchasers without notice, and neither Sawyer nor the defendant stood in either of those relations to the property. It is to be inferred from the report that Sawyer, having received a payment of fifty dollars, was willing to take a mortgage on the property he had sold as security for the remaining four hundred and fifty, especially as it does not appear that he then knew that the new wheel had been placed in the mill.

As the defendant claims that the wheel and fixtures were covered by the Sawyer mortgage the burden of proof was upon him to show that they were attached to the mill at the time the mortgage was executed, which fact is not found by the referee. If the wheel and fixtures were attached to the mill after the mortgage was executed, then on the authority of *Davenport v. Shants et als.*, the lien was good as against the mortgage. As the lien contract was made in New Hampshire the laws and decisions of that State must control this case. *Cochran v. Flint, supra*, seems decisive. There the plaintiff conveyed a tract of land with a saw mill thereon to Jones and Parks, who mortgaged it back to him to secure part of the purchase money. In the year following Jones and Parks took out of the mill the water wheel and saw and put in new ones with the usual accompanying machinery, and they were annexed to the mill in the manner in which such machinery is usually annexed to saw mill buildings. The saw mill and water wheel were purchased of defendant Flint upon the written agreement of Parks that they should remain the property of Flint until paid for, but the plaintiff had no notice of this agreement and Flint had no knowledge of the mortgage. It was held that the defendant Flint was not put upon inquiry into the state of the title to the mill so as to be

charged with constructive notice of the mortgage, and that the act of Jones and Parks in attaching the machinery to the mill was not sufficient to make an annexation in law so as to subject the property to the operation of the previously existing mortgage.

The defendant also claims that this suit cannot in any event be maintained in the name of this plaintiff. The referee reports that the note given by Burton to Buzzell for the wheel and fixtures was discounted at the First National Bank of St. Johnsbury and with the lien writing was transferred to the bank, which for some time before the commencement of this suit had held the interest in the note and lien; that the suit is prosecuted in the interest of the bank, and that the note has not been paid. The lien itself bears upon it no written assignment or transfer.

" Transferred to said bank " signifies nothing more than that it was passed over by Buzzell for the bank to hold the equitable interest therein. There was not such a conveyance of the property itself by Buzzell to the bank as would enable it to maintain an action of trover in its own name. That there must be an actual conveyance of the security to the assignee in order that he may maintain an action in his own name for its conversion was distinctly held in *Batchelder* v. *Jenness*, 59 Vt. 104.

*The judgment of the County Court is affirmed.*