LARDIE *v.* MANISTEE & NORTHEASTERN RAILROAD CO.

1. CARRIERS—NEGLIGENCE—LIMITATION OF LIABILITY.

   The consignor of a carload of potatoes, who accepted a box car for his shipment, rather than to wait for a refrigerator car, assuming the risk of freezing, by special agreement in the form of an indorsement on the shipping order to that effect, could not recover damages for breach of the contract of carriage because of the freezing of the potatoes, where there was no proof of delay, though under the Michigan statute the carrier may insert only such conditions as do not impair his obligation to exercise that degree of care which a reasonably careful man would exercise in regard to similar goods of his own. 2 Comp. Laws 1915, § 8176, subd. 6.

2. SAME—DUE CARE.

   The statute cannot be construed to require the carrier to take precautions which the owner himself does not deem it necessary to take.

3. SAME—ACT OF GOD.

   Where the immediate cause of injury is a sudden or unforeseen event after a delay in shipment, the carrier has in numerous cases been excused from liability to the shipper on the ground that it was an act of God, and a similar rule prevails in Michigan, though the accident occurs during a delay in transit caused by the fault of the railway company.

Error to Grand Traverse; Mayne, J. Submitted April 18, 1916. (Docket No. 80.) Decided June 1, 1916.

Assumpsit by George W. Lardie and another, copartners as George W. Lardie & Son, against the Manistee & Northeastern Railroad Company for breach of a contract to deliver certain goods. Judgment for plaintiffs on a verdict directed by the court. Defendant brings error. Reversed.

*Wilson & Johnson* (*Parm C. Gilbert,* of counsel), for appellant.

*John J. Tweddle,* for appellee.

The plaintiffs, through their agent at Kaleva, bought a car of potatoes at Chief Lake for shipment to Chicago. Their agent ordered a refrigerator car from the defendant's agent at Kaleva, but was unable to get one. He then told the latter that a box car would be all right. A box car was placed and loaded, and the plaintiffs' agent wrote on the shipping order and bill of lading "Owner's Risk Freezing," and, "Box car loaded with perishable freight at shipper's request and shipper's risk." He testified that he did this because he could not get a refrigerator car. The car was taken by the defendant to Kaleva on April 3, 1914, and turned over to the Pere Marquette Railroad Company some time between that date and April 7th. It left Kaleva April 7th. On April 5th the agent of the defendant at Kaleva told the plaintiffs' agent that the potatoes were freezing, and that he should put a stove in the car. The latter testified:

"I didn't do it because the night before was cold * * * I knew that they were frozen some, and I was not going to do anything to them. I called up Mr. Lardie, and he told me not to put any stove in."

The shipment amounted to 648 bushels, and about 100 bushels were frozen when the car reached Chicago. The consignee refused to accept them, and the plaintiffs telegraphed the consignee to turn them over to the railroad company to be sold to the account of the defendant. The plaintiffs now bring this action for a breach of the contract of carriage to recover the damages sustained. The court directed a verdict in their favor on the ground that the loss was caused by an unreasonable delay at Kaleva. The principal

error assigned by the defendant is the refusal of the trial judge to direct a verdict in its favor.

KUHN, J. (*after stating the facts*). Counsel contend that it is the settled rule in this State that a carrier is not liable for damages to freight caused directly by an act of God, notwithstanding a negligent act or omission of the carrier concurred to cause the damage. Such has been the decision in numerous cases where the immediate cause of the injury was a sudden and unforeseen event, occurring after a delay in transportation. See *McLane, Swift & Co.* v. *Elevator Co.*, 136 Mich. 664 (99 N. W. 875, 112 Am. St. Rep. 384) ; *Rodgers* v. *Railway Co.*, 75 Kan. 222 (88 Pac. 885, 10 L. R. A. [N. S.] 658, 121 Am. St. Rep. 416, 12 Am. & Eng. Ann. Cas. 441) ; *Daniels* v. *Ballantine*, 23 Ohio St. 532 (13 Am. Rep. 264) ; *Hoadley* v. *Transportation Co.*, 115 Mass. 304 (15 Am. Rep. 106) ; *Herring* v. *Railroad Co.*, 101 Va. 778 (45 S. E. 322). Plaintiffs' counsel contends that these cases are not in point, because the danger of freezing in this case was known to the defendant and contemplated by the parties. He cites cases from other States where the rule has been adopted that where a carrier receives goods for transportation and an unreasonable delay ensues, during which they are injured by an unavoidable accident, the carrier is liable. But it appears from the case of *McLane, Swift & Co.* v. *Elevator Co.*, *supra,* that the rule is otherwise in Michigan; and the question here presented was passed upon in this State in the case of *Michigan Cent. R. Co.* v. *Burrows*, 33 Mich. 6, where a shipment of apples in November was delayed and damaged by the frost in transit. This court held that, even if the delay were unreasonable, the carrier is not liable for damages caused by the freezing of the goods, though it be concurrent with a delay in transit so unreasonable as to constitute a breach of the contract of carriage. It was said:

"The only breach of this agreement complained of was the failure to deliver within a reasonable time. Are, then, the damages claimed the natural and proximate consequence of such breach? We think not. * * * Cold, freezing weather does not, * * * in the ordinary course of events, follow from mere delay; such is not the natural and direct result of the delay."

The court quoted from *Clark* v. *Moore*, 3 Mich. 62:

"No damages are ever recoverable in actions *ex contractu,* unless they are shown by the party claiming them to be the natural and proximate consequence of the breach complained of."

It is apparent that because of the indorsement on the bill of lading, the present case is a much stronger one for the defendant than the *Burrows Case.* The plaintiffs contend that this indorsement did not relieve the carrier of the duty to use ordinary care, and assert that it failed in this duty by its delay and (by implication) its failure to put a fire in the car. It is the general rule that a carrier may not exempt himself wholly from liability for his negligence, but can limit his liability only by stipulations which are in themselves just and reasonable. See 4 R. C. L. p. 768; 5 Am. & Eng. Enc. Law (2d Ed.), pp. 293, 308, 319; 5 Thompson on Negligence, §§ 6507, 6508; 6 Cyc. p. 409, and notes on page 410. But the stipulation in this contract does not attempt to relieve from liability for negligence. It relieves from liability for a loss which the parties contemplated might be caused by an element beyond the control of both parties, wholly unrelated to any act or omission of the carrier. Indeed, it is not established by any evidence that the potatoes did not freeze before the delay at Kaleva had become unreasonable. It appears that on the 5th, two days after the placing of the car, the defendant's agent advised the plaintiffs' agent to put

a fire in the car and the latter did not do so because "the night before was cold," and he "knew they were frozen." Section 6761, 3 How. Stat. (2d Ed.) ; § 8176, subd. *b*, 2 Comp. Laws 1915, permits the carrier to insert in the bill of lading only such conditions as do not impair his obligation to exercise the—

"degree of care in the transportation and safe-keeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own." Uniform Bills of Lading Act (Act No. 165, Pub. Acts 1911).

But this can hardly be intended to require the carrier to take precautions with goods which the owner himself deems it unnecessary or undesirable to take. The owners were equally aware of the danger of freezing, anticipated it, yet relied upon chance by their failure to put a stove in the car.

The right of the carrier to limit his liability has been restricted on the ground that he might otherwise place the shipper in the plight of either not being able to ship his goods or having to accept an unreasonable limitation of the carrier's liability for negligence. But the plaintiffs were subjected to no such choice. They might have waited for a refrigerator car, but preferred to use a box car and excuse the carrier from liability for the danger to which the shipment would be subject under those conditions. They were not obliged to accept this car or none.

Though the parties contemplated the possibility of a freezing, that fact did not make it the natural consequence of the breach of the contract by unreasonable delay. Even if it had, the plaintiffs have expressly absolved the carrier from liability for the consequences of freezing. There being no evidence that the plaintiffs suffered any damage as the natural and proximate result of the defendant's alleged breach of the

contract, a verdict should have been directed in favor of the defendant.

Judgment is reversed and a new trial ordered, with costs to appellant.

STONE, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. BIRD, J., did not sit.