## THE JEAN JADOT.

### RADIO CIRCULAR CO., Inc., v. COMPAG-NIE MARITIME BELGE (LLOYD ROYAL) SOCIÉTÉ ANONYME.

No. 13622.

District Court, E. D. New York.
Dec. 23, 1935.

Burlingham, Veeder, Clark & Hupper, of New York City (John L. Galey, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (L. de Grove Potter and William H. Postner, both of New York City, of counsel), for respondent and claimant.

MOSCOWITZ, District Judge.

This is a hearing on libelant's exceptions to certain affirmative defenses in respondent's answer and to certain interrogatories propounded to libelant, and also to certain interrogatories propounded to witnesses for respondent.

Under the twentieth article of the answer it is alleged that prior to the shipment referred to in the third amended libel herein the libelant had on various occasions delivered goods to respondent and accepted bills of lading calling for delivery at Antwerp, Belgium, and, in the said instances, respondent had forwarded the goods from Antwerp to Geneva, Switzerland, as against the surrender of the bills of lading at Geneva and without the surrender of the bills at Antwerp. It is further alleged that the bill of lading herein contained substantially similar provisions as those under which previous shipments were made, and, inasmuch as libelant had full knowledge of the aforesaid transactions, it impliedly authorized respondent to forward the goods referred to in the third amended libel from Antwerp to Geneva.

This defense is without merit. Suit is based upon an alleged breach of the provision in the bill of lading that the goods should be delivered "at the port of Antwerp or as near thereto as she may safely get unto shipper's order." Respondent does not, and manifestly could not, assert any ambiguity with respect to this provision for

the place of delivery. Nevertheless, it seeks to justify nonperformance thereunder upon the ground that libelant, by reason of its conduct in certain previous transactions, impliedly authorized respondent to deliver the goods elsewhere.

A bill of lading, in addition to being a receipt, is a contract of carriage, and prior negotiations and oral agreements between the parties are conclusively presumed to be merged therein; thus it has been held that parol evidence cannot be received to contradict the terms of a bill of lading by showing that the parties orally agreed upon a different freight rate, a different route or destination, or a different valuation agreement from that expressed in the contract. Long v. New York C. R. Co., 50 N.Y. 76; White v. Ashton, 51 N.Y. 280; Hinckley v. New York C. & H. R. Co., 56 N.Y. 429; Cohen v. Morris European & American Express Co., 151 App.Div. 672, 136 N.Y.S. 489; Goepel v. Hamburg American Packet Co. (D.C.) 191 F. 744. Clearly respondent's claimed justification, resting, as it does, upon an authorization implied from a previous course of dealing between the parties, stands upon no different footing than an expressed agreement or authorization which contradicts the written contract. It cannot be supported upon any theory of modification or waiver of the terms of an existing contract; each bill of lading referred to was an independent contract; and the transactions relied upon occurred before the making of the bill of lading in suit. The exception to the defense set forth in the twentieth article is sustained.

■ Under the twenty-second and twenty-third articles of the answer it is alleged, in substance, that, while the goods were being transported from Antwerp to Geneva, the goods were seized or sequestered under process of the courts of Switzerland, and nonliability is asserted under the provision of the bill of lading which provides that "the steamer and carrier shall not be liable for loss or damage, occasioned by * * * arrest or restraint of Princes, Rulers, or people. * * *"

The bill of lading provided for delivery of the goods at Antwerp. No sufficient justification for nondelivery at that point is pleaded; nor is there justification for the overcarriage. It is not claimed that the seizure in question prevented the transportation of the goods to Antwerp and delivery there, or that any restraint, within the above provision, was exercised to prevent the performance of the bill of lading contract. It would be contrary to justice if the carrier could rely upon the terms of the above provision of the bill where the overcarriage itself, if not authorized, laid the goods open to the seizure in a country other than that provided for as the place of delivery under the bill. The exception to the defense contained in these articles of the answer is sustained.

■ In the twenty-fifth article of the answer respondent alleges that one Philips controlled patent or license rights in Belgium covering the goods shipped, and the goods, if delivered at Antwerp, "would have been seized or sequestered as they were in Switzerland." This is not a statement of fact, but mere speculation, and has no substantive merit. As to the remaining allegations, even if they be construed as setting up that the performance of the bill of lading contract was illegal, and that it would therefore have been prevented by the Belgium government, and the goods accordingly were without value to libelant at the time of the seizure, respondent has failed to plead the substance of the foreign law relied upon. Coronet Phosphate Co. v. United States Shipping Co. (D.C.) 260 F. 846. The exception to the defense set forth in the twenty-fifth article is sustained.

■ Under the twenty-first article it is alleged that, after the goods referred to in the amended libel herein were forwarded to Geneva, libelant took steps to recover possession of the goods, sought to obtain the purchase price thereof from one Melorad, and conducted itself in such manner as to assert ownership and an interest therein. It is claimed that libelant, by such conduct, ratified the act of respondent in forwarding the goods from Antwerp to Geneva, and waived "any right it might otherwise have for misdelivery of the goods."

The defense is obviously insufficient. Respondent justifies it upon the ground that a deviation has the legal effect of, and is no different from, a conversion, that one may ratify a misdelivery and waive a conversion, and the alleged acts set forth in the article in question constituted such a ratification and waiver. It is sufficient answer that under the libel herein libelant has elected to sue for breach of the contract. It does not follow, as respondent implies, that the shipper's action is only in tort after a deviation. Thus, in the case of

Sidney Blumenthal & Co., Inc., v. United States (D.C.) 21 F.(2d) 798, it was said: "After deviation, the shipper has the option to hold to the contract, or to regard it as abrogated thereby. In the latter event, he sues, not on, but despite of, the contract, and recovers, not on the contract, but in tort."

It follows that the acts alleged in the twenty-fifth article, whatever be their effect under an alleged conversion, cannot constitute any possible ground of defense to an action upon the contract. The exception to the defense set forth in this article is sustained; a like disposition is made of the exception to the defense contained in the twenty-sixth article, upon the ground just stated.

As the foregoing defenses are held to be insufficient, the various interrogatories to which exceptions have been taken are improper upon the ground that they are propounded in aid of these defenses or have no bearing upon respondent's case. Accordingly, the exceptions to interrogatories are sustained.

Respondent may amend its answer within ten days after service upon its attorneys of a copy of the order to be entered hereon.

Settle order on notice.